NELSE ZACHRY, APPELLEE, v. NAOMI T. ZACHRY, APPELLANT.
175 N. W. 2d 616

Filed March 20, 1970. No. 37362.

Mingus & Mingus, for appellant.

Kenneth S. Gotobed, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

Defendant, on her cross-petition, secured a decree of absolute divorce including a court-approved stipulation for a settlement of property rights between the parties, as a result of a trial and hearing before the district court for Buffalo County, Nebraska, on April 29, 1969. By a motion and affidavit attached thereto, appellant now seeks to set aside the property settlement agreement, asserting that she did not enter into it, or approve the stipulation for a property settlement between the parties; that she is not satisfied with the property settlement; and that the plaintiff had other and further property that was not disposed of by the decree and property settlement agreement. The district court, after granting a hearing on the motion to set aside the decree and to grant a new trial, refused to set it aside. We affirm the judgment of the district court.

There is only one assignment of error in this case which relates solely to the property settlement agreement. The parties herein are mature people. Plaintiff is a conductor on the Union Pacific Railroad and the defendant an experienced school teacher. Both had been previously married, and the plaintiff at the time of their marriage was the father of six children by a previous marriage, four of whom are still residing with him. The parties were married in 1959 and both were the owners of property acquired separately from the period of the mar-

riage relationship. There is no allegation or evidence of poor health or disability of either of the parties. The court, in its decree of April 29, 1969, awarded the defendant two lots in the City of Grand Island, Nebraska, and several lots in the Village of Boelus, Nebraska, besides two cemetery lots owned by the plaintiff, together with a sum of $100 cash for credit on one tombstone. Defendant was awarded her personal property and extensive household goods and effects, including a sewing machine, vacuum sweeper, camera and projecting equipment, a corn stalk shredder, bedroom set, two deep freezers, bedding and linen, kitchen equipment, dishes, and silverware. She was also awarded the sum of $2,500 in alimony payable in installments of $100 per month, court costs, and attorney's fee. The plaintiff was awarded a parcel of real estate in the Village of St. Michael, Nebraska, and two town lots in the City of Grand Island, Nebraska. All of these awards were subject to then existing indebtedness. All other personal property of the parties "such as automobiles, household goods, trailer house, and other personal property or assets of every nature" were awarded to the plaintiff. In this approved stipulation, recited by the decree of April 29, 1969, the parties could not agree on the disposition of a large mirror mounted on the wall of the residence in St. Michael, or a small garden tractor. Trial was had on April 29, 1969, and by separate order on May 1, 1969, the court completed the disposition of the property by deciding that the mirror should go to the defendant and the garden tractor to the plaintiff.

It is clear that the control of a divorce decree during the 6-month period pending finality (section 42-340, R. R. S. 1943), is within the sound judicial discretion of the trial court. Colick v. Colick, 148 Neb. 201, 26 N. W. 2d 820; Pittman v. Pittman, 148 Neb. 864, 29 N. W. 2d 790; Roberts v. Roberts, 157 Neb. 163, 59 N. W. 2d 175. If such decree is vacated or modified, under section 42-340, R. R. S. 1943, the exercise of a sound judicial dis-

cretion requires the showing of a good reason therefor and the absence of a unconscionable result. Roberts v. Roberts, *supra;* Collick v. Colick, *supra;* Pittman v. Pittman, *supra.*

The defendant's motion for a new trial and the affidavit in support thereof were filed on May 9, 1969, and apparently without a transcript of the evidence being available to the defendant's newly employed attorney. It appeared that the defendant, after the orally announced decision in open court on April 29, 1969, then discharged her then attorney within a week, and employed her present counsel. In her motion and affidavit she alleges various conclusions and dissatisfactions. Giving maximum effect to her allegations and affidavit she asserts that she did not know of the property settlement agreement; that she did not approve of a stipulation for property settlement; and that the court did not ask her if she approved the settlement agreement incorporated in the decree of April 29, 1969, filed May 29, 1969. She also states, in effect, that the plaintiff had personal property and had sold or transferred some of it prior to the time of the decree and that she did not know the disposition of the proceeds.

The decree in this case, filed May 29, 1969, recites: "Defendant and her attorney, Lloyd W. Kelly present. Conference was had between the attorneys for the parties and the Court relative to a property settlement agreement or division of property stipulation. After having conferred with the Court, the said attorneys counseled with their respective clients, the parties to this action, and said attorneys having been advised by their respective clients, the parties of this action, the following stipulation property settlement agreement or division of property was presented to the Court for its approval, to wit:  * * *."

In the hearing on the motion for new trial on May 26, 1969, the sole evidence introduced was the motion and affidavit of the defendant. The plaintiff did not testi-

fy nor is there anything in this record to controvert the evidence in the record, the recitals and findings in the decree as set out above. It therefore remains conclusive as to what transpired. Segebart v. Gregory, 160 Neb. 64, 69 N. W. 2d 315; Woodard v. Baird, 43 Neb. 310, 61 N. W. 612; Hansen v. Village of Ralston, 147 Neb. 251, 22 N. W. 2d 719. Further, matters certified as part of a record cannot be controlled by statements in an ex parte affidavit. Evans v. Stettnisch, 149 U. S. 605, 13 S. Ct. 931, 37 L. Ed. 866; Woodard v. Baird, *supra;* Security Nat. Bank of Grand Island v. Latimer, 51 Neb. 498, 71 N. W. 38. The bill of exceptions contains the following colloquy between her then counsel, Mr. Kelly, and the court at the beginning of the trial as shown by the transcript of evidence: "THE COURT: Mr. Kelly, you want to—MR. KELLY: At this time, Your Honor, we would ask leave to amend our answer and cross-petition, the prayer thereof, which prayed for separate maintenance, to a request for divorce absolute. THE COURT: And I believe you asked for a change in name, too, did you not? MR. KELLY: Yes, and she be restored to her former name of McPhillips. THE COURT: I will show here then today is 4-29, Defendant given leave to amend cross-petition to ask for divorce and restoration of name of—what was the name? MR. KELLY: McPhillips. THE COURT: Permission granted. Matter came on for trial. *Parties stipulate into record agreement as to property rights and settlement and also facts as to property not agreed upon.* All right. I think we should—the Plaintiff offers no evidence on request for divorce. Evidence received on cross-petition. Mr. Kelly, I believe we are ready for your client to proceed." (Emphasis supplied.)

Defendant and her corroborating witness gave the only evidence at the trial. The record reveals that she is 59 years of age and her husband 53 years of age and that they both had previously been married and both had families by their previous marriages. After con-

siderable examination concerning the background of the stipulation and the agreement for property settlement, the defendant testified as follows: "Q And during the course of this morning and up until now, have you variously discussed with me the purported stipulation and settlement of the personal and real property? A Yes, sir. Q And is that generally agreeable with you? A You mean— Q Those things? A Yes, the way I gave it to you last. Q You agreed to accept things and things that were to stay with him? A Um-hm."

It developed then, and it is not now disputed, that the only matters left for determination were the disposition of a mirror and a small garden tractor. After an examination of the facts and circumstances surrounding these two items, the following undisputed testimony is in the record: "Q And at this time you are requesting the Court to grant you a divorce? A Yes, sir. Q And further to approve the stipulation that has been discussed between the attorneys and the Court and yourself and your husband? A Yes, sir. Q With the exception of those two items, the mirror and the small tractor? A Yes, sir." And in open court, present with her counsel the court concluded the matter with the following statement: "THE COURT: So the Court will take under advisement those three matters as to property. The Court grants the decree of divorce as prayed and within the next three or four days, I will make my decision on those three matters." The decree that was drawn herein was drawn by the defendant's counsel, Mr. Kelly, on express direction of the court, in the defendant's presence, in open court. And it further appeared that the court reporter had made notes of the stipulation and property settlement and that defendant's counsel at that time in open court requested a copy so that he could use them in submitting the decree to the court (signed on May 29, 1969). There is no testimony in the record, either in the original proceeding of April 29, 1969, or in the hearing on motion for new trial that denies or con-

troverts the proposition that the decree that was drawn was in strict conformity with the court's order and understanding of the matter at the time of the trial.

Summarizing, it appears: (1) Both parties were present and represented by counsel, that the property settlement agreement was fairly entered into and fully explored by the parties, their counsel, and the court; (2) there is no evidence of overreaching, fraud, or other unconscionable conduct which could lead the trial court or this court to a conclusion of abuse of discretion; and (3) that the parties to this stipulation and agreement are mature, educated, and intelligent adults, and fully aware of the nature and the extent of their property and the significance of the stipulation.

It appears to us as it must have to the district court that the defendant herein was merely dissatisfied with her fairly entered into, court-approved property settlement and stipulation, and now desires, with new counsel, to use the agreement entered into as a starting point for an additional award. It is apparent that mere dissatisfaction, and a desire to retry the issues after having had her day in court, are considerations which would not appeal to the sound discretion of the court. As we have seen, the matter of setting aside a divorce decree and property settlement agreement previously approved by the court, rests within the sound discretion of the trial court and will not be reversed on appeal in the absence of a showing of an abuse of discretion. An examination of this record reveals a trial and hearing at which the defendant was present in open court, adequately represented by counsel, and a continuing disclosure to her of all of the proceedings and negotiations for the property settlement. It also conclusively shows a careful and conscientious guarding of the rights of the defendant by the court, and no substantial evidence to support her allegations of fact and conclusions alleged in her motion for new trial and affidavit. It further reveals that she was granted the relief she prayed for, and

an entire absence of any legal grounds to set aside the decree.

There being no abuse of discretion in the refusal to set aside the previous decree of divorce and property settlement herein, the judgment of the district court is affirmed. All costs herein are taxed to the defendant.

AFFIRMED.